DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAURIE POTTS,<br><br>    Plaintiff,<br>v.<br><br>CJ EAST, LLC, an Idaho limited liability company, and DAKOTA BOWMAN,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Laurie Potts, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant CJ East, LLC, an Idaho limited liability company, and Dakota Bowman, complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000, *et seq.*; the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*; and the common law of the State of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1 – COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Laurie Potts ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Bonneville County, Idaho.

5. Defendant CJ East, LLC, ("Carl's Jr."), is an Idaho limited liability company, doing business in Bonneville County, Idaho.

6. On information and belief, Defendant Dakota Bowman ("Bowman") is a male citizen and resident of the United States of America, who resides in Bonneville County, Idaho.

7. At all times relevant to this Complaint, Defendant regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 2000e, *et seq.*

## FACTS COMMON TO ALL COUNTS

8. Plaintiff realleges and incorporates by reference paragraphs 1 through 7 as though fully set forth herein.

9. In or around April 2017, Plaintiff began working for Carl's Jr. on 17th Street in Idaho Falls as a front/drive-through cashier. Plaintiff was 16 years old.

10. Plaintiff was also training for the backline, which is the preparation of food.

11. Because Plaintiff had her GED at the time, she worked more hours than most minors. She was often assigned to work the late shift, and her shift was generally set to end at 9:00 pm.

2 –   COMPLAINT AND DEMAND FOR JURY TRIAL

12. Generally, Plaintiff's mother would pick her up from work.

13. In or around mid-June, 2017, Carl's Jr. hired Bowman as the new late shift manager. During the late shift, Bowman was the only manager for the store.

14. Bowman was approximately 25 years old at the time.

15. Although Bowman was initially rude to Plaintiff, one night he asked Plaintiff to take out the trash with him and they both smoked a cigarette. After that, he began having other employees do some of Plaintiff's tasks, while he directed Plaintiff to go outside with him to smoke and talk, or to talk with him in the office or up front.

16. Another employee, ShaRe Garza ("Garza"), was upset because Bowman was making her do some of Plaintiff's job tasks while he was talking to Plaintiff. Plaintiff was uncomfortable with this, but did as Bowman instructed because he was her direct supervisor during the night shift.

17. Shortly after Bowman began having Plaintiff come outside with him, he tried to kiss Plaintiff. Plaintiff backed away, and was intimidated by his physical presence. Bowman is almost six feet tall and strong. Plaintiff is much shorter and weaker than Bowman.

18. After Bowman tried to kiss Plaintiff when she was outside with him at his behest, Bowman also tried to kiss Plaintiff while she was working on the backline. Occasionally, Plaintiff went along with the kissing, but stopped him when he tried touching her. Plaintiff would tell him they were there to work, and push him away.

19. Bowman would become angry when Plaintiff rejected him. He would then either ignore Plaintiff, be rude to her, or assign her additional job tasks so she had to stay longer. Bowman would tell Plaintiff that if she didn't get the additional job tasks done, he would write Plaintiff up as a disciplinary action.

20. Other employees, including managers, knew that Bowman was flirting with Plaintiff, asked about Plaintiff's age, and that Plaintiff felt Bowman was stalking her on social media.

21. There were occasions when Plaintiff's mother had to wait for Plaintiff in the parking lot to pick Plaintiff up for an hour or more because Bowman made Plaintiff do extra job tasks before she could leave.

22. Although the Carl's Jr. store where Plaintiff worked had video cameras, none of them were working and all of the employees were aware the cameras were not working.

23. On several occasions, Bowman would grab Plaintiff and pull her into the back office. Plaintiff tried hard to stop him, but he was much stronger than she was.

24. On the occasions when Bowman was able to pull Plaintiff into the back office, he would shut the door and pull her toward the desk chair where he would sit down and unbutton his pants. It was clear to Plaintiff that he wanted her to perform oral sex on him.

25. Bowman did this to Plaintiff three times, and all three times Plaintiff was able to get away and leave the office. However, Bowman would become angry and make Plaintiff do additional job tasks outside of her normal job duties.

26. Bowman tried to have sexual contact with Plaintiff multiple times each night shift when she worked with him. He also wanted Plaintiff to sext him. Bowman would be possessive of Plaintiff if Plaintiff saw him out in public, or if Plaintiff's male friends would come into the Carl's Jr. restaurant to see Plaintiff.

27. Plaintiff told Bowman several times that she was not his girlfriend.

28. In or around mid-July 2017, Bowman asked Plaintiff to go out and have a smoke while he and Plaintiff were at work. Bowman had Plaintiff come with him to the dumpster pit where

4 –   COMPLAINT AND DEMAND FOR JURY TRIAL

the dumpster sits in a walled off area with a gate. Bowman closed the gate and pulled Plaintiff onto his lap.

29. Bowman complimented Plaintiff and gave her a cigarette. Bowman unbuttoned his pants and indicated he wanted Plaintiff to give him oral sex. Plaintiff complied because she did not want him to treat her harshly or give her extra job duties, as he had done in the past when she had rejected him.

30. On or about August 18, 2017, Bowman convinced Plaintiff to sneak out at night and meet him at Idaho Falls High School, where Bowman had sex with Plaintiff.

31. Plaintiff's mother learned of Bowman's behavior and reported him to law enforcement.

32. The next day, Plaintiff endured a sexual assault exam, and law enforcement collected a rape kit from Plaintiff.

33. Bowman learned of the police report and fled the area. Bowman tried to convince Plaintiff to go with him, but Plaintiff would not.

34. Plaintiff called one of the store shift managers, Sam Coats ("Coats"), and told her what had occurred. Coats told Plaintiff that she had to report the Bowman's actions to Tara Bivins ("Bivins"), the new store manager, and to Shane Lees, the general manager. Coats told Plaintiff that none of the things that happened to Plaintiff due to Bowman's conduct should have happened.

35. All of Plaintiff's coworkers appeared to know about Bowman's conduct toward Plaintiff and that she had reported Bowman to law enforcement.

36. One of Plaintiff's coworkers, Garza, who was also a manager, began harassing Plaintiff. She stated to Plaintiff that, "If I had ruined somebody's life, I'd either run away with them or kill myself." She also touched another shift manager's buttocks and said, "I just touched your

butt, but I can do that because you are over 18." She also said, "16 will get you 20," referencing statutory rape. Garza also intentionally took actions to make Plaintiff's job duties more difficult, such as scooping fries into a container that Plaintiff needed for an order and then dumping them out.

37. Coats recognized how poorly Plaintiff was being treated at work and helped Plaintiff fill out an application to work for Burger King. However, Plaintiff remained at Carl's Jr. The security cameras at the Carl's Jr. 17th Street location are still, to Plaintiff's knowledge, not in working order, and no additional training regarding sexual harassment or workplace discrimination ever occurred.

38. Plaintiff was terrified that Bowman would return and try to hurt her. Other managers would try to discuss Bowman with Plaintiff, which cause her significant distress.

39. In or around October 2018, Bowman pled guilty to rape where the victim is 16 or 17 years old and the perpetrator is 3 years or more older.

40. On or about December 10, 2017, Plaintiff dually filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and Equal Employment Opportunity Commission ("EEOC").

41. On or about June 3, 2019, Plaintiff received her Notice of Right to Sue.

42. Plaintiff has exhausted her administrative remedies.

## COUNT ONE
## VIOLATION OF TITLE VII/IHRA
**(Sexual Harassment/Hostile Work Environment)**

43. Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 42 as though fully set forth herein.

44. Plaintiff is female and therefore belongs to a protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

45. Plaintiff was subjected to unwanted comments and touching by Bowman, including sexual advances, grabbing, groping, kissing, oral sex and sexual intercourse.

46. Bowman's conduct was unwelcome.

47. Bowman's conduct was based upon Plaintiff's sex.

48. Bowman's conduct was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and create a sexually abusive and hostile work environment.

49. Plaintiff perceived the working environment to be abusive, hostile, and/or offensive.

50. A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive, hostile, and/or offensive.

51. Plaintiff suffered tangible employment actions such as being required to do extra work, being required to work late when she refused Bowman's advances, and being required to give sexual favors to Bowman.

52. As a direct and proximate result of Carl's Jr.'s actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, emotional distress, consisting of outrage, shock, and humiliation, reasonably occurring and likely to occur based on the sexual harassment and hostile work environment she experienced. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

53. Carl's Jr.'s conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT TWO
## VIOLATION OF TITLE VII/IHRA
### (Retaliation)

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff engaged in a protected activity under Title VII and the Idaho Human Rights Act when she reported Bowman's sexual harassment, the hostile work environment, and Bowman's sexual assault of Plaintiff to Carl's Jr. management.

56. Plaintiff was subjected to adverse employment actions as a result of her protected activity.

57. Carl's Jr. discriminated against Plaintiff and/or retaliated against Plaintiff due to her engaging in protected activity.

58. As a direct and proximate result of Carl's Jr.'s actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, emotional distress, consisting of outrage, shock, and humiliation, reasonably occurring and likely to occur based on the sexual harassment and hostile work environment she experienced. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

59. Carl's Jr.'s conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT THREE
## NEGLIGENT SUPERVISION

60. Plaintiff realleges and incorporates by reference paragraphs 1 though 59 as though fully set forth herein.

61. Carl's Jr. owed a duty to Plaintiff to control an employee it knows has dangerous propensities so he will not injure third parties.

62. Carl's Jr. management, including Coats, observed Bowman's treatment of Plaintiff, had observed Bowman giving Plaintiff extra attention and flirting with Plaintiff, knew Bowman asked about Plaintiff's age, specifically responded when Bowman asked questions about Plaintiff's age that whatever he was thinking that probably wasn't a good idea, and received reports from Plaintiff that Bowman wanted his relationship with her to be serious and that he was stalking her on social media, and that Plaintiff felt concerned and threatened.

63. Bowman used his position of power over Plaintiff to perpetrate sexual harassment, a hostile work environment, and sexual assault, on Plaintiff at work and off-site.

64. Carl's Jr.'s observations of Bowman's conduct toward and around Plaintiff created a situation where Carl's Jr. should have reasonably anticipated Bowman would commit the actions complained herein.

65. As a direct and proximate result of Carl's Jr's failure to exercise due care to protect Plaintiff from foreseeable tortious acts of Bowman, Plaintiff has suffered and will continue to suffer damages, including emotional distress, consisting of outrage, shock, and humiliation.

## COUNT FOUR
## NEGLIGENCE PER SE

66. Plaintiff realleges and incorporates by reference paragraphs 1 though 65 as though fully set forth herein.

67. Pursuant to Idaho Code § 18-6101(2), "Rape is defined as the penetration, however, slight, of the oral, anal, or vaginal opening with a penis accomplished under any one (1) of the following circumstances: Where the victim is sixteen (16) or seventeen (17) years of age and the perpetrator is three (3) years or more older than the victim." The punishment for rape is

"imprisonment in the state prison not less than one (1) year, and the imprisonment may be extended to life in the discretion of the District Judge, who shall pass sentence." Idaho Code § 18-6104.

68. Idaho Code § 18-6101(2) provides the applicable duty of care.

69. Idaho Code § 18-6101(2) was intended to prevent the type of harm Bowman's and Carl's Jr.'s actions, via the doctrine of *respondeat superior*, inflicted upon Plaintiff.

70. Plaintiff is a member of the class Idaho Code § 18-6101(2) was designed to protect, in that she was 16 years old, and Bowman was 25 years old, at the time of the rapes that occurred (both oral sex and sexual intercourse).

71. Bowman's violation of Idaho Code § 18-6101(2) was the proximate cause of Plaintiff's injury.

72. Carl's Jr. is liable for Bowman's actions through the doctrine of *respondeat superior* because Bowman's actions were committed within the scope of Bowman's employment with Carl's Jr., were committed on Carl's Jr.'s premises or committed as a result of Bowman's having power and control over Plaintiff due to Plaintiff's employment relationship with Carl's Jr., and Bowman was otherwise under the direction or control of Carl's Jr. when his actions toward Plaintiff occurred.

73. As a direct and proximate result of Carl's Jr.'s actions and/or failure to act, Plaintiff has suffered emotional distress and other damages, to be proven at trial.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff realleges and incorporates by reference paragraphs 1 though 73 as though fully set forth herein.

75. Carl's Jr. had a legally recognized duty to ensure its minor employees were not sexually harassed or abused by its other employees.

76. Carl's Jr. breached its duty to ensure its minor employees were not sexually harassed or abused by its other employees.

77. There is a causal connection between Carl's Jr.'s conduct in failing to ensure its minor employees were not sexually harassed or abused by its other employees and its breach of that duty.

78. Plaintiff suffered actual loss or damage as a result of Carl's Jr.'s actions.

79. Plaintiff suffered physical manifestations of emotional distress as a result of Carl's Jr.'s actions.

80. Carl's Jr. is liable for the acts of its employees, including but not limited to Bowman, Garza, and Bivins, through the doctrine of *respondeat superior*.

81. As a direct and proximate result of Carl's Jr.'s actions and/or failure to act, Plaintiff has suffered emotional distress and other damages, to be proven at trial.

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. Plaintiff realleges and incorporates by reference paragraphs 1 though 81 as though fully set forth herein.

83. Carl's Jr. acted intentionally or recklessly with regard to Plaintiff's employment at Carl's Jr.

84. Carl's Jr.'s conduct was extreme and outrageous.

85. There was a casual connection between Carl's Jr.'s conduct and Plaintiff's emotional distress.

86. Plaintiff's emotional distress was severe.

87. Carl's Jr. is responsible for the actions of its employees, including but not limited to Bowman, Garza and Bivens, through the doctrine of *respondeat superior.*

88. As a direct and proximate result of Carl's Jr.'s actions and/or failure to act, Plaintiff has suffered emotional distress and other damages, to be proven at trial.

## COUNT SEVEN
## BATTERY

89. Plaintiff realleges and incorporates by reference paragraphs 1 though 88 as though fully set forth herein.

90. On numerous occasions, Bowman physically touched Plaintiff.

91. Bowman's physical contact with Plaintiff was harmful and without consent.

92. Bowman's contact with Plaintiff was unlawful, harmful, and offensive.

93. Plaintiff suffered emotional and physical harm as a result of Bowman's actions.

94. Bowman committed the batteries in the course and scope of his employment with Carl's Jr.

95. Bowman, and Carl's Jr., through the doctrine of *respondeat superior*, are liable for the batteries committed against Plaintiff by Bowman.

96. As a direct and proximate result of Bowman and/or Carl's Jr.'s actions and/or failure to act, Plaintiff has suffered emotional distress and other damages, to be proven at trial.

## ATTORNEY'S FEES

97. As a further direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel, and have incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 1981(b), and 42 U.S.C. § 2000e-5(k).

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## **PRAYER FOR RELIEF**

Plaintiff seeks the judgment of the Court against Defendants as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2. For any equitable remedies available to her;

3. For punitive damages;

4. For statutorily available costs and attorney's fees;

5. For prejudgment interest on all amounts claimed; and

6. For such other and further relief as the Court deems just and proper.

DATED this 14th day of June, 2019.

      */s/*_____
Amanda E. Ulrich, Esq.
Casperson Ulrich Dustin PLLC

C:\Users\Amanda\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\DC\19910 Potts\Pleadings\Complaint.REV1.wpd:dg